**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**CIVIL CASE NO. 3:05cv231**

| | |
|---|---|
| **CONTINENTAL TIRE NORTH AMERICA, INC. and EXEL INC.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **O R D E R** |
| ) | |
| **TRANSPORTATION SOLUTIONS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion to Compel Discovery Responses from the Defendant [Doc. 46]; the Defendant's Motion to Compel Production of Documents [Doc. 48]; the Plaintiff's Motion for Partial Summary Judgment on Defendant's Counterclaim [Doc. 55]; and the Defendant's Motion to Strike Supplemental Morales Declaration [Doc. 70]. The Court held a hearing on these motions on November 21, 2007.

## I.     Factual Background

The submittals of the parties show the following facts are not in dispute.  The Plaintiff Continental Tire North America, Inc. ("CTNA") is in the business of manufacturing and selling tires for trucks and cars in the United States, Canada and Mexico.  The Plaintiff Exel, Inc. ("Exel") provides supply chain management services and transportation management services to CTNA.  The Defendant Transportation Solutions, Inc. ("TSI") provides logistics, transportation, and warehousing services in domestic and international commerce.

In 1999, CTNA and TSI entered into a Logistics Services Agreement ("1999 Logistics Services Agreement"), whereby CTNA hired TSI to perform post-audit services for "all transportation freight bills dated for the past six (6) months where [CTNA] was the payor of the freight charges." Pursuant to this agreement, TSI agreed to file necessary claims to recover overcharges, in exchange for which TSI would receive a percentage of the recovered funds.

The 1999 Logistics Services Agreement further states, in pertinent part, as follows:

It is agreed by all parties involved the services provided by TSI, as outlined in this agreement, will be provided for all [CTNA]

2

facilities currently involved with or having direct responsibility for the transportation, distribution, warehousing and/or processing of goods, in domestic or international commerce.

Any facility not presently involved with or having direct responsibility for the logistics, transportation, distribution, warehousing and/or processing of goods, in domestic or international commerce, will be added to this agreement for an additional sum to be addressed in this agreement.

In March, 2000, CTNA and TSI entered into another Logistics Services Agreement ("2000 Logistics Services Agreement") whereby TSI agreed to provide "pre-audit" services for CTNA. Pursuant to this agreement, TSI agreed to perform weekly audits of "all transportation freight bills where [CTNA] is the payor of freight charges," including "all shipments moving in domestic or international commerce, routed via carriers in all modes of transportation." Like the 1999 Logistics Services Agreement, the 2000 Logistics Services Agreement states that TSI's services would be provided "for all [CTNA] facilities currently involved with or having direct responsibility for the transportation, distribution, warehousing and/or processing of goods, in domestic or international commerce."

In July, 2000, CTNA requested that TSI customize their logistics system to provide a new accounting code and cost allocation process. TSI

agreed to develop this new process. Accordingly, the parties executed an addendum ("Addendum") to the 2000 Logistics Services Agreement. Pursuant to this Addendum, CTNA agreed to pay TSI $299,159.50 for the new system, to be paid by a $100,000 initial payment, with the remainder to be paid through an adjustment of the fees charged by TSI in processing CTNA's freight bills. While most of these service fees were increased, two of these fees, for accounting code allocation and multiple line item data fields, were waived under this agreement. The Addendum provides that "[a]cceptance of this arrangement will require [CTNA] to insure TSI receives all freight bills that are to be paid for all modes of transportation."

In June, 2004, CTNA entered into a contract ("Transportation Management Agreement") with Exel, pursuant to which Exel agreed to perform certain transportation, logistical, and administrative services, including payment services, for CTNA. As a result of the Transportation Management Agreement, CTNA, TSI, and Exel executed an Invoicing Agreement in January, 2005 ("Invoicing Agreement"). The Invoicing Agreement, which became effective on January 1, 2005, provides that TSI will transmit all CTNA's freight invoices to Exel for payment in satisfaction of CTNA's obligations under the Logistics Services Agreements:

4

> TSI shall remit to Exel all freight bills received by
> TSI for outbound shipments of tires from CTNA
> warehouse and distribution facilities in the United
> States to destinations within the NAFTA region,
> dated on or after January 01, 2005.
>
> *    *    *
>
> CTNA, Exel and TSI agree and acknowledge that (i)
> as required by the TSI Agreement [the 2000
> Logistics Services Agreement, as amended by the
> July, 2000 Addendum], TSI will continue to perform
> a pre-audit and/or freight bill processing on all
> transportation freight bills where CTNA (or, under
> the Transportation Agreement, Exel) is the payor of
> freight charges, with no material decrease (based
> on history and practice and processing
> requirements) in the level of processing of such
> freight bills or in the ranges of services being
> provided in connection with such pre-audits and
> freight bill processing . . . .

There is also a new fee schedule attached to the Invoicing Agreement,

which provides new rates for TSI's services, including those services for

which fees were previously waived.

For the first two months of 2005, TSI did not charge any fees to

CTNA or Exel for performing those services for which fees had been

waived under the Addendum to the 2000 Logistics Services Agreement.  In

March, 2005, Exel advised TSI that it would not extend the Invoicing

Agreement past the previously-agreed July 1, 2005 expiration.  Thereafter,

CTNA contends, TSI began submitting invoices charging fees for those

services for which fees were previously waived.  TSI contends that it was only acting in accordance with the Invoicing Agreement fee schedule, and that it only began charging these new fees once the Invoicing Agreement was signed on January 25, 2005.

CTNA and Exel refused to pay the new fees, and TSI in turn refused to forward payment to CTNA's carriers.  This lawsuit followed.

The Plaintiffs assert claims of breach of contract, violations of the covenant of good faith and fair dealing, conversion, breach of fiduciary duty, constructive fraud, constructive trust, unfair and deceptive trade practices, indemnification, and reformation of a written instrument.  TSI, in turn, has filed a counterclaim against the Plaintiffs, asserting various claims and alleging, in pertinent part, that CTNA and Exel failed to insure that TSI received all of CTNA's freight bills for processing, particularly those freight bills for shipments to, from, and within Mexico.

## I.    Motions to Compel

At the November 21 hearing, the Court instructed the parties to confer further in an attempt to resolve their discovery issues without further Court intervention.  By letter dated November 30, 2007, CTNA's counsel

advised the Court that, with respect to CTNA's Motion to Compel, TSI has agreed to provide supplemental responses. The letter further states that upon review of these supplemental responses, CTNA will promptly advise the Court of any outstanding issues that the parties are unable to resolve. CTNA's letter does not address whether the parties attempted to confer further regarding TSI's Motion to Compel.

## A. Plaintiff's Motion to Compel

As indicated by CTNA's November 30, 2007 letter, TSI has agreed to supplement its responses in an effort to resolve this motion without further Court intervention. Counsel for CTNA are hereby **DIRECTED** to advise the Court on or before **December 10, 2007** whether any outstanding issues remain related to this particular motion.

## B. Defendant's Motion to Compel

### 1. The Parties' Contentions

TSI moves to compel the Plaintiffs to provide full and complete responses to its discovery requests, which seek the production of freight bills, bills of lading, and other transportation documents related to CTNA's

shipments to, from, and within Mexico, as well as general information regarding CTNA's business in Mexico.[1]

The Plaintiffs objected to TSI's discovery requests, arguing that CTNA was not the "payor" of freight bills from Mexico, and therefore, the requested information is not relevant to this action. CTNA further denied that it was responsible for paying freight bills to or from Mexico or that it has any warehousing or manufacturing facilities in Mexico.

TSI counters that the documents which it seeks are relevant to TSI's counterclaim for breach of contract, as they are evidence of CTNA's failure to provide TSI with all of the freight bills as required by the contract. TSI further argues that CTNA's claims that it is not responsible for paying Mexican freight bills and that it has no facilities in Mexico are contradicted by CTNA's own websites and other public statements, as well as numerous freight bills (attached to the Defendant's Motion as Exhibit J) which TSI processed for CTNA for shipments from Mexico to the United States for which CTNA was listed as the "bill to" party.

---

[1]The discovery requests at issue are the First Requests for Production of Documents propounded to CTNA and Exel, attached to the Defendant's Motion as Exhibits D and E; the Fourth Request for Production of Documents propounded to CTNA, attached to the Defendant's Motion as Exhibits F; and the First Interrogatories to CTNA, attached to the Defendant's Motion as Exhibit G.

In response, CTNA argues that the documents sought by TSI are not relevant because such freight bills were paid by Continental Tire de Mexico, S.A. de C.V. ("CTM"). CTNA argues that CTM is a CTNA subsidiary which, since its formation in 2002, has been a separate corporate entity from CTNA and has handled its freight needs separately from CTNA. Exel argues that any documents responsive to TSI's requests are in the possession of Exel Logistics, S.A. de C.V., a Mexican company affiliated with Exel, Inc.

The Plaintiffs further argue that the requested discovery is not relevant to this action because the parties' agreements did not give TSI any contractual right to handle the invoices for this Mexican freight. Additionally, the Plaintiffs argue that TSI's requests are overbroad and would impose an undue burden by requiring each of them to undergo a difficult and time-consuming process of identifying tens of thousands of shipping documents, all in Spanish, at various locations in Mexico. CTNA estimates that it would take approximately 640 employee hours and would cost at least $35,000 to produce the requested documents.

TSI counters that some of the invoices already produced (and which are attached to its Motion as Exhibit J), indicate that CTNA, not CTM, was

the payor of at least some of the freight bills for shipments to and from Mexico. Even if CTM paid most of the invoices for the Mexican freight, TSI argues that this does not preclude the Court from determining that CTNA was the ultimate "payor" for these bills within the meaning of the parties' contracts. TSI also points out that CTM was created only in 2002, and therefore, this discovery is necessary at least to determine who was the payor for the freight bills prior to CTM's creation.[2]

## 2.    Analysis

Parties to a civil action "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). The information sought "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

Discovery, however, is not without its limits, and the Court should limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues

---

[2]While CTNA attempts to resolve this factual question with the Supplemental Declaration of Luis Enriquez de Rivera Morales, this declaration has been stricken, for reasons that will be explained later in this opinion.

at stake in the litigation, and the importance of the proposed discovery in resolving the issues." See Fed. R. Civ. P. 26(c); McDougal-Wilson v. Goodyear Tire and Rubber Co., 232 F.R.D. 246, 249 (E.D.N.C. 2005).

Whether the requested freight bills and other documentation are relevant to this action depends on whether these freight bills constitute "transportation freight bills where CTNA is the payor of freight charges." The proper interpretation of this contractual language is the subject of the Plaintiff's Motion for Partial Summary Judgment, which is currently pending before this Court. TSI argues that, based upon its own interpretation of the term "payor," CTNA has refused to produce the requested documents, thereby depriving TSI of the very information it needs to determine whether in fact CTNA was the payor of these freight charges. TSI argues, and the Court is inclined to agree, that the issue of whether CTNA was the "payor" for the Mexican freight cannot properly be determined unless and until TSI has had the opportunity to review the Mexican freight bills for itself.

The Court is aware, however, that producing all of the potentially relevant freight bills and associated documents for the relevant time period may prove to be an expensive and burdensome task. Accordingly, the Court will require an initial limited production of these documents, thereby

alleviating some of the burden and expense of production from the

Plaintiffs while at the same time providing TSI with the information

necessary to determine whether further production is warranted.

Accordingly, **IT IS, THEREFORE ORDERED** that the Plaintiffs CTNA

and Exel will be required to produce documents responsive to TSI's

discovery requests as follows:

(1) CTNA and Exel will have thirty (30) days from the entry of
this Order to produce a representative sample of one thousand
(1,000) of the Mexican freight bills, along with an affidavit from
the appropriate person with knowledge explaining how the
representative sample was obtained.  This affidavit must
contain a specific statement (under penalty of perjury) that no
actions have been taken to remove or exclude from the sample
any invoices which reflect CTNA as payor.

(2) If any of the documents produced in the representative
sample indicate that CTNA is the payor of the invoice (*e.g.,*
CTNA is listed as the "bill to" party), then CTNA and Exel will be
required to produce all freight bills and bills of lading responsive
to TSI's discovery requests within sixty (60) days of the date of
the entry of this Order at their own expense.

(3) If none of the documents produced in the representative
sample reflect that CTNA is the payor for the subject freight,
TSI may nevertheless demand production of all the Mexican
freight bills and bills of lading at issue, and CTNA shall be
required to produce such documents.  However, if TSI decides
to demand further production of such documents, TSI will be
required to reimburse CTNA for the cost of such production, at
the rate of twenty-two cents ($.22) per page.

(4) In the event that none of the documents produced in the representative sample reflect that CTNA was the payor, but TSI nevertheless requires full production of the Mexican freight bills and bills of lading, and it is later determined that there are more than fifty (50) freight invoices or bills of lading identifying CTNA as payor of the freight charges, CTNA shall refund the cost of production ($.22 per page) paid by TSI, and in addition thereto, CTNA shall be required to pay to TSI the like amount of twenty-two cents ($.22) per page produced as a sanction for having obstructed the discovery of documents that would be relevant to this case even under CTNA's theory regarding the construction of the contract, pursuant to Rule 37(a)(4) of the Federal Rules of Civil Procedure.

TSI also moves to compel supplemental responses to its interrogatories pertaining to CTNA's activities in Mexico. These interrogatories generally seek information about "CTNA facilities," any "separate parent or holding company(ies)" for "CTNA operations," and "CTNA entities, facilities, companies, and/or locations" within Mexico. CTNA generally denies having any operations or facilities in Mexico. TSI contends that CTNA "provided incomplete answers by distancing itself from Continental's Mexico business," a claim which TSI alleges is contradicted by other documents produced in discovery.

The interrogatories propounded by TSI are, at best, overbroad and vaguely worded. TSI does not attempt to define what is meant by such phrases as "CTNA operations" or "CTNA entities, facilities, companies,

and/or locations."  Not surprisingly, such overbroad and vaguely worded requests solicited similarly overbroad and vague responses from CTNA. Given the lack of defined terms in these interrogatories and the generally overbroad nature of the requests, TSI's motion to compel supplemental responses to these interrogatories shall be denied at this time.  However, the parties are directed to meet and confer in an attempt to narrow the scope of TSI's interrogatories to the appropriate CTNA subsidiary which operates and/or maintains facilities in Mexico.

For the foregoing reasons, TSI's Motion to Compel is granted in part and denied in part.


## II.    Plaintiff's Motion for Partial Summary Judgment

CTNA moves the Court for summary judgment on Count One of TSI's counterclaim to the extent that such counterclaim is based on TSI's claim that it was entitled to audit freight invoices other than those invoices for which CTNA was the payor.

For the reasons previously stated, there are considerable questions of fact as to whether the freight bills for shipments to and from Mexico are freight bills for which CTNA may be deemed the "payor" under the parties'

agreements.  The responses to the outstanding discovery requests propounded by TSI, which have been compelled pursuant to this Order, may aid the parties and the Court in resolving this factual dispute. Accordingly, the Court finds that a ruling on the Plaintiff's Motion for Partial Summary Judgment is premature at this time.  Accordingly, the Court's consideration of Plaintiff's Motion for Partial Summary Judgment will be deferred until after the production of the subject Mexican freight documents.  Upon production of these documents (the manner of which has been dictated by this Order), TSI shall have ten (10) days to file a supplemental brief to its response to the Motion for Partial Summary Judgment.  CTNA shall have ten (10) days to file a reply to TSI's supplemental brief.  Any supplemental brief shall not exceed ten (10) pages in length, shall be double-spaced, and shall be in at least 14 point font.

## III.    Defendant's Motion to Strike

In moving for partial summary judgment, CTNA argues that the shipments to and from Continental facilities in Mexico were paid not by CTNA, but by CTNA's subsidiary, CTM.  In support of this contention,

CTNA submits the Declaration of Luis Enriquez de Rivera Morales, CTM's

general counsel.  In opposition to CTNA's motion, TSI argues that CTM

began operations in 2002, and that, prior to CTM's creation in 2002, CTNA

owned and managed the tire business in Mexico (and thus was responsible

for payment of the Mexican freight bills).  In its reply brief, CTNA argues for

the first time that prior to CTM's creation in 2002, another Continental

subsidiary, General Tire de Mexico, S.A. de C.V. ("GTM") was the payor of

freight charges for its own shipments in Mexico.  In support of this

argument, CTNA proffers a supplement to Morales' Declaration, in which

Morales states, in pertinent part, as follows:

1.  My name is Luis Enriquez de Rivera Morales.  I am over
18 years of age, am not incompetent, and **have personal
knowledge of the facts set forth herein**.

\*       \*       \*

3.  I am employed as General Counsel of Continental Tire de
Mexico, S.A. de C.V. ("CTM").  **I have been employed
with CTM since April 2004.**

\*       \*       \*

5.  **Before 1999 and until CTM's beginning operations in
2002,** a Mexican corporation named General Tire de
Mexico, S.A. de C.V. ("GTM"), manufactured and sold
passenger and truck tire in Mexico as an affiliate of
CTNA.  The majority of stock of GTM (99%) was owned
by CTNA.  Like CTM, GTM administered and paid its own

freight transportation charges.  Accordingly, GTM entered into contract with freight carriers located in Mexico.

6.      I understand that the Plaintiff in this case has made unsworn statements in legal briefs that "there was no payor [of freight bills] other than CTNA" during 1999 and 2000 concerning freight bills for transportation in Mexico. To the contrary, **during 1999 and 2000, GTM was the payor of freight bills on the basis described in paragraph 5 above.**

[Doc. 69, Morales Supplemental Declaration] (emphasis added).

TSI moves to strike the Supplemental Declaration, as well as all references to said Declaration in CTNA's reply brief in support of its Motion for Partial Summary Judgment.  For grounds, TSI contends that the Supplemental Declaration presents new facts to which TSI has had no opportunity to respond.  TSI further contends that the Supplemental Declaration is untimely and that it is not relevant, as Morales only testifies as to shipments and sales within Mexico, not to and from the United States.  Finally, TSI argues that the Supplemental Declaration fails to show how Morales has any personal knowledge or competence as to the matters testified to therein.

CTNA counters that Morales' Supplemental Declaration responds to the "incorrect factual assertion" that TSI presented for the first time in its Memorandum in response to the Motion, namely that CTNA was the entity

responsible for payment of all Mexican freight bills prior to CTM's creation in 2002. Accordingly, CTNA argues, the Supplemental Declaration is not untimely and should be considered by the Court.

The Court finds that Morales' Supplemental Declaration should be stricken for several reasons. First, the Supplemental Declaration asserts new facts which CTNA raised for the first time in its reply brief. Such facts could have and should have been raised by CTNA's original motion. By producing this information in its reply brief, CTNA deprived TSI of an opportunity to respond to these new allegations. See Black v. TIC Investment Corp., 900 F.2d 112, 116 (7th Cir. 1990) ("Where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the movant an opportunity to respond.").

However, Rule 56(a) makes clear that supporting affidavits are to filed "with" the Motion for Summary Judgment. See Fed. R. Civ. P. 56(a). Only opposing affidavits are allowed to be filed later. See Fed. R. Civ. P. 56(c). Rule 56(e) makes clear that the Rule contemplates only such "supporting" and "opposing" affidavits. While the Court may allow such affidavits to be supplemented or opposed by further affidavits, see Fed. R.

Civ. P. 56(e), no leave was sought to supplement Morales' original affidavit in this case.

In arguing that the second Morales affidavit is necessary to correct an "incorrect factual assertion" contained in TSI's Response Brief, CTNA exhibits a fundamental misunderstanding of the difference between evidence and argument. The provision in TSI's Memorandum to which CTNA points is the argument of an inference from the first Morales affidavit that was filed by CTNA. Such an argument gives to movant no more opportunity to offer new affidavits than a party would have a right to offer new evidence after closing arguments at trial just because the attorneys did not know what inferences his opponent would argue.

It is noted that the relevance of Morales' Supplemental Declaration is questionable, as Morales speaks only to the payment of freight bills for shipments *within* Mexico, not to the payment of the freight bills for shipments between Continental facilities in Mexico and the United States. Limited relevancy, however, is not a basis for striking an affidavit.

Finally, Morales' statement that he has personal knowledge of the matters discussed in his Supplemental Declaration is highly suspect. Morales states that he has been employed by CTM's since 2004. He does

not indicate that he has ever had any affiliation with CTM's predecessor, GTM.  The Supplemental Declaration provides no basis for Morales' assertion that he has knowledge of GTM's activities several years before he was employed as general counsel by CTM.

The recitation in an affidavit or declaration that the statements made therein are based on personal knowledge is not pro forma; it is not a legal nicety or mere surplusage.  It is not an incantation to be recited prior to stating the substance of the affiant's testimony.  It is a legal requirement of Rule 56:

> Supporting and opposing affidavits *shall be made on personal knowledge,* shall set forth such facts as would be admissible in evidence, and *shall show affirmatively that the affiant is competent to testify to the matters stated therein*.

Fed. R. Civ. P. 56(e) (emphasis added).  Such recitation also constitutes a sworn statement by the affiant that the matters stated therein are made upon the affiant's personal knowledge.  If that assertion is determined to have been made in bad faith, both the affiant and the attorney presenting the affidavit may be found in contempt.  <u>See</u> Fed. R. Civ. P. 56(g).

Morales' Supplemental Declaration on its face raises serious concerns regarding his personal knowledge of the matters asserted

therein.  The Court declines to make any determination at this time that the affidavit was offered in bad faith.  The Court notes, however, that the form of the Morales affidavit reflects a sloppy practice which all counsel are urged to avoid.

For the foregoing reasons, the Supplemental Declaration of Luis Enriquez de Rivera Morales shall be stricken.


## IV.     Conclusion

For the foregoing reasons, **IT IS, THEREFORE, ORDERED** that CTNA shall advise the Court in writing on or before December 10, 2007 as to whether any outstanding issues remain regarding the Plaintiff's Motion to Compel Discovery Responses from the Defendant [Doc. 46].

**IT IS FURTHER ORDERED** that the Defendant's Motion to Compel Production of Documents [Doc. 48] is **GRANTED IN PART** and **DENIED IN PART**, to the extent stated herein.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Partial Summary Judgment on Defendant's Counterclaim [Doc. 55] is **DEFERRED** at this time.

**IT IS FURTHER ORDERED** that the Defendant's Motion to Strike

Supplemental Morales Declaration [Doc. 70] is **GRANTED**.

**IT IS SO ORDERED.**

Signed: December 4, 2007

Martin Reidinger
United States District Judge